# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

BRIAN WAYNE PATTERSON,      )
               )
       **Petitioner,**      )
               )
**v.**                )     **Case No. 18-CV-0153-GKF-JFJ**
               )
**STEVEN HARPE, Director,**[1]    )
               )
       **Respondent.**     )

## OPINION AND ORDER

Petitioner Brian Wayne Patterson, a self-represented Oklahoma prisoner, petitions for a writ of habeas corpus, under 28 U.S.C. § 2254, claiming he is in state custody in violation of federal law under the criminal judgment entered against him in Tulsa County District Court Case No. CF-2013-5464. He identifies forty-three claims. Respondent opposes the petition, asserting some claims are not reviewable under 28 U.S.C. § 2254(a) because they allege only errors of state law, some claims should be denied under 28 U.S.C. § 2254(d) because the Oklahoma Court of Criminal Appeals ("OCCA") reasonably applied clearly established federal law and reasonably determined the facts when it rejected those claims, and most claims are not reviewable under the procedural default doctrine. On consideration of the petition (Dkt. 1) and supporting exhibits (Dkts. 2, 3, 4); the response (Dkt. 41), supplemental response (Dkt. 73), and record of state court proceedings (Dkts. 42, 44); the reply (Dkt. 46) and supplemental reply (Dkt. 88); and applicable law, the Court finds and concludes that the petition shall be denied.

---

[1] Because Patterson presently is incarcerated at the Lawton Correctional and Rehabilitation Facility, a privately operated prison, in Lawton, Oklahoma, the proper respondent is the Director of the Oklahoma Department of Corrections. Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*. The Court therefore substitutes Steven Harpe, Director, in place of Carrie Bridges, Warden, as party respondent. The Clerk of Court shall note on the record this substitution.

## *BACKGROUND*

One afternoon in October 2013, A.J. Zinn, a seventy-five-year-old retiree, was getting into his Cadillac in the parking lot of a Tulsa store when Patterson approached him, falsely accused him of stealing Patterson's car, and threatened to shoot him. Dkt. 42-5, Tr. Trial vol. 2, at 59-66.[2] Zinn tried to close his driver's side door, Patterson prevented him from doing so, and Patterson proceeded to physically assault Zinn, repeatedly punching him in the torso and face, and biting his thumb. *Id.* at 66-72. Ultimately, Patterson forced Zinn out of the Cadillac and drove away in the Cadillac, leaving Zinn laying on the ground with a head wound that required stitches. *Id.* at 72-76. Within hours of the robbery, law enforcement officers found Zinn's car parked about a mile away from the store. *Id.* at 86. Based on his preliminary investigation of the robbery, Detective Matt Frazier developed Patterson as a suspect. *Id.* at 84-89.

One to two hours after Patterson attacked Zinn and stole his Cadillac, Officer Travis Helm saw Patterson driving a truck. *Id.* at 21-26. Officer Helm saw Patterson exceed the speed limit and fail to stop at a stop sign, so Helm attempted a traffic stop. *Id.* Patterson fled. *Id.* at 25. Following a high-speed car pursuit involving two police officers, the use of a police helicopter to track Patterson's movements, a brief foot chase, and the use of pepper spray to overcome Patterson's efforts to avoid being handcuffed, Officer Helm and Officer Tim Buckner arrested Patterson. *Id.* at 22-34, 41-49. Officer Helm, who had chased Patterson on foot, advised Officer Buckner that he had seen Patterson toss something on the ground during the chase. *Id.* at 47-48. Officer Buckner retraced the path of the foot pursuit and found two latex rubber gloves and a set of keys. *Id.* at 47-48. Detective Frazier later confirmed that these keys belonged to Zinn. *Id.* at

---

[2] For consistency, and unless otherwise indicated, the Court's citations refer to the CM/ECF pagination.

99-100.  Detective Frazier and a second detective interviewed Patterson the next day.  *Id.* at 89-98; Dkt. 42-6 (State's Ex. 1, videotaped interview).

Following a trial, a jury convicted Patterson of first-degree robbery, eluding a peace officer, and obstructing a public officer, all after former conviction of two or more felonies.  Dkt. 42-8, Original Record ("O.R.") vol. 1, at 147-51.  For these convictions, the jury recommended, respectively, a term of life imprisonment and a $5,000 fine, a consecutive 30-year prison term and a $5,000 fine, and a concurrent one-year jail term.  *Id.*  The trial court sentenced Patterson accordingly.  Dkt. 42-7, Tr. Sent. Hr'g, at 4.  Through counsel, Patterson filed a direct appeal in the OCCA raising six claims.  Dkt. 41-2.  Patterson also filed a supplemental pro se brief, asserting five additional claims.  Dkt. 41-3.  The OCCA affirmed Patterson's convictions and sentences in May 2016.  Dkt. 41-1.  Patterson did not seek further direct review by filing a petition for writ of certiorari in the United States Supreme Court ("Supreme Court").

Before and after filing the instant habeas petition, Patterson sought postconviction relief by filing five applications in state court.  In his first application, Patterson raised thirty-one claims.  Dkt. 41-5.  The state district court denied relief, finding twenty-nine claims were procedurally barred and rejecting two claims on the merits.  Dkt. 41-7.  Patterson filed a postconviction appeal, and the OCCA affirmed.  Dkt. 41-9.

Through his next four applications, filed between August 2017 and September 2020, Patterson sought postconviction relief on one claim:  Patterson's claim that because he is Indian, the State of Oklahoma did not have jurisdiction to prosecute him for crimes he committed in Indian country (hereafter, "Indian country jurisdiction claim").  Dkts. 41-10, 41-15, 58-1, 73-7.  The state district court denied each application on procedural grounds, Patterson filed postconviction appeals in three instances, and the OCCA affirmed the denial of relief each time.  Dkts. 41-12, 41-

3

14, 41-17, 58-3, 58-4, 73-7, 73-10.

Petitioner filed the instant habeas petition on March 19, 2018, asserting forty-three claims, and initial briefing was completed in January 2020. Dkts. 1, 41, 46. This Court twice stayed this habeas proceeding so that Patterson could fairly present the Indian country jurisdiction claim in state court. Dkts. 31, 60. Following the conclusion of Patterson's last state postconviction appeal, the Court lifted the stay and reopened this matter, and both parties filed supplemental briefs addressing the Indian country jurisdiction claim, identified in this proceeding as claim forty-three. Dkts. 64, 73, 78.

### DISCUSSION

A federal court may grant habeas relief to a state prisoner only if the prisoner shows that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Conversely, a federal court may not grant habeas relief to a state prisoner if the prisoner's claims challenge the lawfulness of his custody based on alleged errors of state law. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

But even when a state prisoner presents only federal claims, provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and decisions from the United States Supreme Court tightly circumscribe a federal court's discretion to grant habeas relief. Under the AEDPA, "[a] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." 28 U.S.C. § 2254(b)(1)(A); *Davis v Davila*, 582 U.S. 521, 527 (2017). And the scope of federal habeas review depends on how the state court resolved the federal claim. If

4

the state court denied the federal claim based on an independent and adequate state procedural rule, the federal claim is technically exhausted but procedurally defaulted for purposes of federal habeas review. *Davila*, 582 U.S. at 527; *Coleman v. Thompson*, 501 U.S. 722, 732 (1991), *modified on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012). A federal court may not review, much less grant habeas relief on, a procedurally defaulted claim unless the petitioner first shows either cause for the procedural default and resulting prejudice or that the federal court's failure to review the claim will result in a fundamental miscarriage of justice. *Davila*, 582 U.S. at 527; *Coleman*, 501 U.S. at 750.

If the state court denied the federal claim after a merits adjudication, a federal court may grant habeas relief only if the petitioner first shows that the state court's adjudication of the federal claim resulted in a decision that either (1) is "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). When a claim is subject to review under § 2254(d)(1), a federal court must determine (1) whether clearly established federal law—i.e., "something akin to [an] on-point holding[]" by the Supreme Court, exists and, if so, (2) whether the state court either (a) decided the federal claim in a manner that is contrary to the Supreme Court's holding or (b) applied that law to the facts of the case in an objectively unreasonable manner. *House v. Hatch*, 527 F.3d 1010, 1015-19 (10th Cir. 2008). A state court decision is objectively unreasonable only if it "is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Under § 2254(d)(2), habeas review focuses on the state court's determination of the facts relevant to the federal claim. *House*, 527 F.3d at 1015, 1019. But "[t]he standard for determining whether the state court's

decision was based on an unreasonable determination of the facts 'is a restrictive one.'" *Frederick v. Quick*, 79 F.4th 1090, 1104 (10th Cir. 2023) (quoting *Grant v. Trammell*, 727 F.3d 1006, 1024 (10th Cir. 2013)), *cert. denied*, 144 S. Ct. 2634 (2024). A federal court "must defer to the state court's factual determinations so long as 'reasonable minds reviewing the record might disagree about the finding in question." *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)).

If a state prisoner either overcomes a procedural default of a federal claim or satisfies § 2254(d)'s preconditions to relief, the federal court will not automatically grant relief on a federal claim. Rather, the federal court will review the claim de novo and, if the court finds a constitutional error, "must assess [its] prejudicial impact . . . under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)]." *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007). Under the *Brecht* standard, a federal court will grant habeas relief only if the court "is in grave doubt as to the harmlessness of an error that affects substantial rights." *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995).

As previously stated, Patterson identifies forty-three claims in the petition. Rather than list them here, the Court's discussion proceeds as follows. First, the Court considers Respondent's arguments that claims two, three, and nine allege only state law errors that are not subject to federal habeas review. Next, the Court considers Respondent's arguments that § 2254(d) bars relief as to claims one, four through eight, ten, eleven, and forty-one. Last, the Court considers Respondent's arguments that claims twelve through thirty-four, thirty-six, thirty-seven, thirty-nine, forty, and forty-three are procedurally defaulted and that Patterson has not overcome the procedural default of these claims either through a showing of cause and prejudice or through his assertions of actual

innocence in claims thirty-five, thirty-eight, and forty-two.[3]

## I.      Claims that are not subject to federal habeas review

Respondent contends that claims two, three, and nine allege only state law errors that are not subject to federal habeas review. Dkt. 41 at 18-27, 52-55. Through these claims Patterson alleges: (1) the trial court abused its discretion when it instructed the jury that the range of punishment for two of his offenses included imprisonment and a mandatory fine (claim two); (2) the trial court committed plain and prejudicial error when it admitted unredacted sentencing documents, in the second stage of Patterson's bifurcated trial, reflecting that Patterson previously had been given a suspended sentence (claim three); and (3) the trial court abused its discretion when it instructed the jury that it could consider "flight" in determining guilt (claim nine). Dkt. 1, at 7-8, 15. Alternatively, Respondent contends that even if Patterson fairly presented these claims to the OCCA as federal claims implicating his Fourteenth Amendment right to due process, § 2254(d)(1) bars relief because the OCCA reasonably applied the federal due process standard when it determined these alleged trial errors did not deprive Patterson of his substantial rights. *Id.*

As to claim two, the OCCA applied state law and plain-error review, found that the trial court erroneously instructed the jury regarding the range of punishment by instructing them that a fine was mandatory, and reasoned that this error did not impact the jury's sentencing decision. Dkt. 41-1 at 4-5. As to claim three, the OCCA applied state law and plain-error review, found that the trial court erroneously admitted the challenged sentencing documents, and reasoned that the error did not affect Patterson's substantial rights or the outcome of the trial because even if this evidence had been omitted, the jury heard evidence that Patterson had seven prior felony

---

[3] "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).

convictions. *Id.* at 5-6. As to claim nine, the OCCA noted that the flight instruction was given over Patterson's objection, found error in giving the instruction under state law, and reasoned that the error did not require relief because "Patterson was charged with eluding police, and this was in part proved by the foot chase following the car chase," and that the jury's "consideration of this same evidence in the context of flight could not change in any way the jury's fundamental determination of guilt." *Id.* at 9.

The Court agrees with Respondent that each of these claims allege state law errors that generally are not cognizable on habeas review because claims two and nine challenge the propriety of jury instructions and claim three challenges the admission of evidence. *See McGuire*, 502 U.S. at 67-68 & n.2 (noting that even if evidence is admitted in violation of state evidentiary rules, "such state-law violations provide no basis for federal habeas relief"); *id.* at 71-72 ("[T]he fact that the [jury] instruction was allegedly incorrect under state law is not a basis for habeas relief."); *Ngyuen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (stating, "[a]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings").

As Respondent acknowledges, however, a federal habeas court can review claims alleging that the introduction of evidence or erroneous jury instructions "so infected the entire trial that the resulting conviction violates due process." *McGuire*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *see also Andrew v. White*, 604 U.S. ___, 145 S. Ct. 75, 81 (2025) (noting that Supreme Court precedent makes "clear that the introduction of unduly prejudicial evidence could, in certain cases, violate the Due Process Clause"); *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) ("A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). Nonetheless, "[b]eyond the specific guarantees

enumerated in the Bill of Rights, the Due Process Clause has limited operation" and the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990).

For two reasons, the Court finds that habeas relief is not warranted as to claims two, three, and nine. First, Patterson did not present these claims to the OCCA as federal due process claims and thus does not frame them in this proceeding as federal due process claims.[4] In his state appellate brief, Patterson mentioned the Fourteenth Amendment and due process only in his challenge to the jury instruction at issue in claim two. Dkt. 41-2 at 16, 18. Beyond that, his arguments in support of claims two, three, and nine relied solely on state law. *Id.* at 16-22; Dkt. 41-3 at 6. Second, the OCCA effectively evaluated fundamental fairness when it applied its plain-error review standard to evaluate the jury instruction challenged in claim two and the allegedly erroneous admission of evidence challenged in claim three. Dkt. 41-1 at 4-6; *see Thornburg v. Mullin*, 422 F.3d 1113, 1124-25 (10th Cir. 2005) (reasoning that "Oklahoma's plain-error test is rooted in due process" and that when the OCCA applies plain error and denies relief, a federal court "must defer to [the OCCA's] ruling" unless the OCCA unreasonably applied the fundamental fairness test). Patterson has not shown that the OCCA's rejection of the jury instruction error alleged in claim two or the evidentiary error alleged in claim three is based on an unreasonable application of the fundamental fairness test, so the Court defers to the OCCA's decision as to both claims. The OCCA did not apply plain-error review to evaluate the allegedly erroneous flight

---

[4] Patterson, who appears without counsel, reasserts claims he presented in state court and, for most claims, solely relies on the arguments he presented in state court. Dkt. 1, generally. While the Court must liberally construe his pleadings, it cannot make legal arguments for Patterson. *Childers v. Crow*, 1 F.4th 792, 798 n.3 (10th Cir. 2021). The Court thus evaluates Patterson's claims as he presents them by referring to the arguments he made in state court, unless he has supplemented those arguments.

instruction because that instruction was given over Patterson's objection.  Dkt. 41-1 at 9.  But even if this Court generously reads claim nine as asserting that this erroneous instruction deprived Patterson of his Fourteenth Amendment right to due process, Patterson has not shown that the instructions, as a whole and considered in context of the trial record, rendered his trial fundamentally unfair.  *See McGuire*, 502 U.S. at 72 ("It is well established that the [erroneous] instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record.").  As the OCCA reasoned, even though the trial court erred in giving the flight instruction, that error was not prejudicial because Patterson was charged with eluding police, the State presented evidence that Patterson fled from law enforcement officers by car and by foot, and "the jury's consideration of this same evidence in the context of flight could not change in any way the jury's fundamental determination of guilt."  Dkt. 41-1 at 9.

To the extent claims two, three, and nine could be construed as raising only state law errors, the Court concludes that habeas relief is unavailable.  Alternatively, having reviewed the jury instructions and the trial record, the Court finds that Patterson has not shown that these trial errors rendered his trial fundamentally unfair.  The Court thus denies the petition as to claims two, three, and nine.

## II.    Claims subject to review under 28 U.S.C. § 2254(d)

Respondent contends that § 2254(d) precludes relief as to claims one, four through eight, ten, eleven, and forty-one because Patterson has not shown that the OCCA's adjudication of these claims resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established federal law or that is based on an unreasonable determination of the facts presented in state court.  Dkt. 41 at 13-18, 27-51, 55-60, 67-76.  Through these claims, Patterson alleges:  (1) the trial court abused its discretion in failing to suppress his videotaped interview because it was

admitted in violation his Fifth Amendment right of self-incrimination (claim one); (2) the evidence was insufficient to prove beyond a reasonable doubt that Patterson committed the crime of eluding a police officer (claim four); (3) the evidence was insufficient to prove beyond a reasonable doubt that Patterson committed the crime of first-degree robbery (claims five and ten); (4) trial counsel provided constitutionally deficient representation (claims six and seven); (5) prosecutorial misconduct deprived Patterson of a fair trial (claim eight); (6) Patterson was deprived of his right to represent himself at trial (claim eleven); and (7) appellate counsel provided constitutionally deficient representation (claim forty-one). Dkt. 1 at 6, 9, 11-14, 17, 58-59.

### A.    Claim one:  admission of incriminating statements

As he did on direct appeal, Patterson claims the trial court violated his Fifth Amendment right against self-incrimination by admitting a videotape of his post-arrest interview. Dkt. 1 at 6; Dkt. 41-2 at 10-15. Before trial, Patterson moved to suppress the videotaped interview, arguing he initially waived his right to remain silent and agreed to talk to detectives, he later told them he was "done" with the interview, and the detectives failed to honor his request to terminate the interview, thereby rendering incriminating statements he made after that request inadmissible under *Miranda v. Arizona*, 384 U.S. 436 (1966). Dkt. 42-8, O.R. vol. 1, at 128. The trial court conducted a pretrial hearing, pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964), to determine the admissibility of Patterson's statements. Dkt. 42-4, Tr. Trial vol. I, at 29-45. After receiving testimony from Detective Frazier, viewing the videotaped interview, and considering oral arguments, the trial court determined that the statements were voluntary and admissible and thus denied Patterson's motion to suppress. *Id.*

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. 5. In recognition of this right, the *Miranda*

Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  384 U.S. at 444.  Relevant here, those procedural safeguards include warnings that the defendant "has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  *Id.*  And, inherent in the right to remain silent is a criminal suspect's ability "to cut off questioning" at any time after it has begun by invoking the right to remain silent or requesting an attorney.  *Michigan v. Mosley*, 423 U.S. 96, 100-01 (1975) (quoting *Miranda*, 384 U.S. at 474); *see Miranda*, 384 U.S. at 473-74 ("If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.").  When law enforcement officers violate these mandates, any subsequent confessions or incriminating statements may be inadmissible at trial.  *Mosley*, 423 U.S. at 100-03.  The *Mosley* Court emphasized that law enforcement officers must "scrupulously honor[ ]" a suspect's right to cut off questioning.  *Id.* at 104.

Since *Miranda*, the Supreme Court has repeatedly emphasized that there is no constitutional right to receive *Miranda* warnings and that *Miranda*'s "prophylactic rules" exist only to protect against compulsory self-incrimination.  *See Vega v. Tekoh*, 597 U.S. 134, 141-44 (2022) (stating that "[a]t no point in the [*Miranda*] opinion did the Court state that a violation of its new rules constituted a violation of the Fifth Amendment right against compelled self-incrimination.  Instead, it claimed only that those rules were needed to safeguard that right during custodial interrogation"; and gathering cases describing *Miranda*'s rules as "prophylactic");  *Moran v. Burbine*, 475 U.S. 412, 424 (1986) (stating that "*Miranda* warnings are 'not themselves rights protected by the Constitution but [are] instead measures to insure that the [suspect's] right

12

against compulsory self-incrimination [is] protected" (alterations in original) (quoting *New York v. Quarles*, 467 U.S. 649, 654 (1984))).

Relevant here, the Supreme Court has focused on the need for a criminal suspect to "affirmatively" and "unambiguously" invoke his Fifth Amendment rights. *See Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (noting that suspect's invocation of right to remain silent must be "unambiguous"); *cf. Davis v. United States*, 512 U.S. 452, 461 (1994) (explaining that suspect must "affirmatively invoke[ ]" the right to have counsel present for custodial interview). The *Thompkins* Court held that ambiguous or equivocal statements regarding the right to cut off questioning are insufficient to invoke the Fifth Amendment protection against self-incrimination. 560 U.S. at 381-82. The Supreme Court has also held that the Fifth Amendment privilege "generally is not self-executing." *Salinas v. Texas*, 570 U.S. 178, 181 (2013) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 425 (1984)). Thus, a defendant "who 'desires the protection of the privilege must claim it' at the time he relies on it." *Salinas*, 570 U.S. at 183 (quoting *Murphy*, 465 U.S. at 427).

Applying these principles, the OCCA rejected Patterson's Fifth Amendment claim. The OCCA found that "[t]he plain language of Patterson's statement appears to invoke his right to silence, although the entire videotape shows a more nuanced and ambiguous conversation." Dkt. 41-1 at 2-3. The OCCA assumed without deciding that Patterson sufficiently invoked his right to remain silent and to cutoff questioning before he made incriminating statements and found that any error in the admission of his inculpatory statements was harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18 (1967). *Id.* at 3-4. *Chapman* held "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24. In determining that the assumed Fifth

13

Amendment error was harmless, the OCCA reasoned:

> Patterson's admission to police, during the interrogation, was not a full confession: in tears, he apologized to the victims and their families. Significant evidence at trial supported Patterson's conviction. The victim identified Patterson as the man who hit him and took his car; police developed Patterson as a suspect in part through Target store video surveillance footage; Patterson discarded the keys to Zinn's car during his flight from police. From this evidence, without his statement, jurors could have found Patterson guilty beyond a reasonable doubt. *Harmon*, 2011 OK CR 6, ¶ 33, 248 P.3d at 933-34; *Blanton*, 2007 OK CR 37, ¶ 18, 172 P.3d at 211-12. Patterson does not show that admission of his statement had any improper effect on the jury's sentence recommendation. The error is harmless beyond a reasonable doubt, and this proposition is denied.

Dkt. 41-1 at 4.

Patterson asserts that the OCCA's adjudication of this claim was "contrary to and [an] unreasonable application of clearly established law . . . and is based upon an unreasonable determination of the facts in light of the state court record." Dkt. 46 at 4-5. But the facts he cites to support these assertions focus on whether a Fifth Amendment violation occurred. *Id.* As just discussed, the OCCA assumed a Fifth Amendment violation occurred and found the constitutional error harmless under *Chapman*. Because the OCCA's resolution of the Fifth Amendment claim rests on its application of *Chapman*'s harmless-error rule, Patterson's burden is to show that the OCCA unreasonably applied *Chapman*. *See Fry*, 551 U.S. at 119 (reiterating that "when a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable" (emphasis in original) (citing *Mitchell v. Esparza*, 540 U.S. 12 (2003) (*per curiam*)). Patterson does not mention the OCCA's harmless-error analysis, much less show that the OCCA unreasonably applied *Chapman*. Dkt. 46 at 4-5. Regardless, this Court reviewed the trial record, including Patterson's videotaped interview, and finds that fairminded jurists would not disagree with the OCCA's application of *Chapman* under the facts of this case. Because § 2254(d) precludes relief, the Court denies the petition as to claim one.

14

### B.    Claims four, five, and ten:  sufficiency of the evidence

As he did on direct appeal, Patterson claims the State did not present sufficient evidence at trial to prove, beyond a reasonable doubt, that he committed the offenses of eluding a police officer (claim four) and first-degree robbery (claims five and ten).[5]  Dkt. 1 at 9, 11, 16; Dkt. 41-2 at 22-25; Dkt. 41-3 at 7-8.

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)).  Under *Jackson*, the question for a reviewing court "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319 (emphasis in original).

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  *Cavazos v. Smith*, 565 U.S. 1, 2, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011) (*per curiam*).  And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The

---

[5] In the petition, Patterson identifies claim ten as "Witness Impeachment."  Dkt. 1 at 16.  He presented this claim to the OCCA on direct appeal, but his appellate arguments provide little clarification as to the legal basis for his claim. Dkt. 41-3 at 7-8.  In its appellate brief, the State construed this claim as challenging the sufficiency of evidence to support the robbery conviction based on the victim's alleged lack of credibility.  Dkt. 41-4 at 51-53.  The OCCA addressed this claim as one challenging the admission of evidence—namely, the admission of the victim's inconsistent statements regarding his identification of the robbery suspect. Dkt. 41-1 at 9-10.  In this proceeding, Respondent adopts the State's view that claim ten challenges the sufficiency of the evidence to support the robbery conviction.  Dkt. 41 at 55-57.  In his reply brief, Patterson seems to adopt Respondent's view that claim ten relates to his claim five challenge to the sufficiency of the evidence to support the robbery conviction.  Dkt. 46 at 7-8.  On this record, the Court finds it appropriate to consider claim ten in conjunction with claim five.

federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012)

The OCCA found the evidence sufficient to support both of Patterson's convictions.

Addressing his challenge to the conviction for eluding a police officer, the OCCA stated:

> [T]aking the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Patterson endangered other people, and that he eluded the police. *Easlick v. State*, 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559. To sustain a conviction for eluding a police officer the State had to show that, while Patterson was driving, a police officer in an official police vehicle activated lights and sirens to stop him, but he willfully eluded the officer by increasing his speed, and in so doing endangered another person. OUJI-CR 2d 6-30; 21 O.S. 2011, § 540. Patterson drove through residential neighborhoods at the excessive speed of 56-60 miles per hour; he lost control of his truck and hit a pole, but kept driving at a high rate of speed; several other cars and a school bus were on the road throughout the chase.

Dkt. 41-1 at 6. As to the first-degree robbery conviction, the OCCA reasoned:

> [T]aking the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Patterson committed first degree robbery. *Easlick*, 2004 OK CR 21, ¶ 15, 90 P.3d at 559. To sustain a conviction for first degree robbery, the State had to show Patterson wrongfully took and carried away another's personal property, while (a) inflicting serious bodily injury on the person in the process, or (b) threatening the person with serious bodily injury; or (c) putting the person in fear of immediate serious bodily injury. OUJI-CR 2d 4-141; 21 O.S. §§ 797, 798. Patterson hit the victim, pulled him out of his car, and knocked him to the ground. The victim had a black eye, painful injured ribs, and wounds to his head which had to be medically closed with staples. Patterson also bit Zinn's thumb badly. The victim testified that , as of the time of trial, he was still affected by his injuries; he could not lift heavy things or work outside for long periods of time, and his ribs and lower back still hurt. In addition, when Patterson drove off he almost ran over the victim's foot. Patterson argues that the State failed to prove alternative (a), that he inflicted serious bodily injury on Zinn. He relies on *Owens v. State*, in which this Court held that multiple abrasions from a similar incident, not requiring medical treatment, did not constitute serious bodily injury. *Owens v. State*, 2010 OK CR 1, ¶ 9, 229 P.3d 1261, 1265. The two cases are not comparable; the victim's injuries were more severe than those in *Owens*. In addition, although the Information referred to the first alternative, Patterson's jury was instructed on all three of the alternatives, and the evidence showed that he both threatened to and did put the victim in fear of immediate serious bodily injury.

16

*Id.* at 6-7.  The OCCA separately addressed claim ten, construing it as a challenge to the admission of the victim's inconsistent statements.  In so doing, the OCCA reasoned that "some of the victim's statements Patterson complains about were not inconsistent," that "[o]ther potential inconsistencies were explored at trial in cross-examination," that the record "does not support [Patterson's] claims that he was misidentified," and that "issues related to witnesses' identification of Patterson were explored in cross-examination."  *Id.* at 9-10.

Patterson asserts that the OCCA's adjudication of claims four, five, and ten resulted in a decision that is contrary to clearly established federal law, involves an unreasonable application of clearly established federal law, and is based on an unreasonable determination of the facts.  Dkt. 46 at 6-8.  For three reasons, the Court disagrees.  First, the OCCA applied the *Jackson* standard, not some contradictory legal rule, in evaluating Patterson's claims.  Second, while Patterson strongly disagrees with the OCCA's assessment of the evidence presented at trial, the record not only supports the reasonableness of the OCCA's determination of the facts but also supports the reasonableness of the OCCA's application of *Jackson* to the facts of this case.  Third, to the extent Patterson contends the victim's testimony was not credible, the OCCA reasonably applied *Jackson* by deferring to the jury's evaluation of witness credibility and resolution of conflicting evidence.  *See Jackson*, 443 U.S. at 319 (noting that the *Jackson* "standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  Because § 2254(d) precludes relief, the Court denies the petition as to claims four, five, and ten.

## C.    Claims six and seven:  ineffective assistance of trial counsel

Patterson claims that trial counsel provided constitutionally deficient legal representation, resulting in a violation of his Sixth and Fourteenth Amendment right to the assistance of counsel.

Dkt. 1 at 12-13.  He alleges, as he did on direct appeal, that trial counsel:  (1) should have objected to the erroneous jury instructions about imposition of fines; (2) should have objected to the admission of sentencing documents during the second stage of his bifurcated trial that reflected Patterson previously had received suspended sentences; (3) should have presented a voluntary intoxication defense and questioned witnesses identifications of Patterson; (4) should have interviewed witnesses; (5) should have investigated Patterson's mental health history to develop mitigating evidence; (6) should have done a better job of impeaching the victim's testimony; and (7) should not have referenced, in closing argument, Patterson's statements from his videotaped interview wherein Patterson appeared to apologize to the victims and their families.  Dkt. 41-2 at 25-27; Dkt. 41-3 at 2-3.[6]

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."  U.S. Const. Amend. 6.  The Supreme Court has interpreted this provision of the Sixth Amendment, applicable to the states through the Fourteenth Amendment, as providing a criminal defendant with the right to the effective assistance of counsel. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) ("It has long been recognized that the right to counsel is the right to the effective assistance of counsel."); *Gideon v. Wainwright*, 372 U.S. 335, 341-44 (1963) (reaffirming that the Sixth Amendment right to counsel is applicable to the states through the Fourteenth Amendment's Due Process Clause).  In *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984), the Supreme Court recognized that "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by

---

[6] Patterson's appellate counsel raised the first two allegations regarding trial counsel's alleged ineffectiveness.  Dkt. 41-2, at 25-27.  The OCCA permitted Patterson to file a supplemental pro se brief, and Patterson raised the remaining allegations.  Dkt. 41-3 at 2-3.  Patterson's supplemental pro se brief is nearly illegible, so the Court has done its best to accurately identify Patterson's allegations of ineffectiveness.

defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." The *Strickland* Court established that

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. Thus, to prevail on an ineffective assistance of counsel claim, a defendant must establish (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. On habeas review, a federal court's review of a *Strickland* claim is limited because, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Richter*, 562 U.S. at 105; *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.").

Applying *Strickland*, the OCCA determined that Patterson did not establish prejudice. Dkt. 41-1 at 7-8. The OCCA first addressed the alleged deficiencies identified by appellate counsel, stating,

> Patterson claims counsel was ineffective for failing to object to the instructions mandating fines for Counts I and II, and failing to object to the introduction of the Judgment and Sentence documents showing he had previously received suspended sentences. We found in Propositions II and III that, in the context of the entire trial,

19

although the substantive issues underlying these claims were errors, they were harmless and thus did not rise to the level of plain error. We will not find counsel ineffective for failing to preserve the record on those errors. This proposition is denied.

*Id.* at 8. The OCCA then addressed the additional alleged deficiencies and found no prejudice, reasoning that it had already found "that admission of Patterson's videotaped statement was not plain error, so any omissions or acts of counsel Patterson may be claiming in connection with its admission will not constitute ineffective assistance." *Id.* The OCCA further reasoned that Patterson fails to show how any of counsel's other alleged omissions prejudiced him." *Id.*

Patterson asserts that the OCCA's adjudication of claims six and seven resulted in a decision that is contrary to clearly established federal law, involves an unreasonable application of clearly established federal law, and is based on an unreasonable determination of the facts presented in state court. Dkt. 46 at 6-7. But Patterson does not develop any arguments to support these assertions. *Id.* In any event, the Court finds that the OCCA applied *Strickland*—not some contradictory legal rule—even following *Strickland*'s guidance that if court can resolve a claim based on the absence of prejudice, a court should do so. Dkt. 41-1 at 7-8; *see Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). And, having reviewed the trial record, the Court finds that the OCCA's decision that Patterson did not establish the requisite prejudice to support his claims is objectively reasonable both as a matter of law and as a matter of fact. For these reasons, § 2254(d) precludes relief and the Court denies the petition as to claims six and seven.

### D.    Claim eight: prosecutorial misconduct

Patterson reasserts his claim, raised on direct appeal in his supplemental pro se brief, that prosecutorial misconduct deprived him of a fair trial. Dkt. 1 at 14; Dkt. 41-3 at 4-5. Patterson

appears to allege the prosecutor made prejudicial remarks during closing argument by commenting on evidence excluded from trial, specifically, the location where the victim's stolen Cadillac was found and hearsay evidence about vitamins purchased by Zinn and found in Patterson's possession; by stating that Detective Frazier booked Patterson into jail, that Patterson ran multiple red lights when, in fact, Patterson ran five stop signs and one red light; and that Patterson threw the victim to the curb and drove off (because the parking lot did not have curbs); and by expressing his personal beliefs about the evidence and directing remarks to Patterson personally. Dkt. 41-3 at 4-5.

In evaluating a claim that prosecutorial misconduct deprived a defendant of his Fourteenth Amendment right to a fair trial, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "An inquiry into the fundamental fairness of the trial requires an examination of the entire proceedings, including the strength of the evidence against the defendant." *Hanson v. Sherrod*, 797 F.3d 810, 843 (10th Cir. 2015). "Where the state court has adjudicated the claim of prosecutorial misconduct on the merits, [this Court must] apply AEDPA's deferential standard of review." *Id.*; *see also Dickerson v. Miller*, No. 22-CV-0074-GKF-SH, 2025 WL 899344, at *9 (N.D. Okla. Mar. 24, 2025) (unpublished)[7] (noting that "because the federal due process standard provides a general rule of application, state courts have more leeway in applying that rule." (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The OCCA rejected Patterson's prosecutorial misconduct claim, stating:

Patterson complains of several comments in closing argument. Patterson objected

---

[7] The Court cites all unpublished decisions herein for their persuasive value. Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

to one comment, and we review the remainder for plain error. *Mathis v. State*, 2012 OK CR 1, ¶ 24, 271 P.3d 67, 76. Parties have wide latitude to discuss the evidence and inferences from it, and we will not grant relief unless grossly unwarranted argument affects the defendant's rights, prejudicing him to the point he is deprived of a fair trial. *Bell v. State*, 2007 OK CR 43, ¶ 6, 172 P.3d 622, 624. We review challenged comments in the context of the whole trial, including the arguments of both parties and the strength of the State's evidence. *Taylor v. State*, 2011 OK CR 8, ¶ 55, 248 P.3d 362, 379. The record does not support Patterson's characterization of these comments as improper. The trial court did not abuse its discretion in overruling the single comment to which Patterson objected, and the remainder were not error. There is no plain error, and this proposition is denied.

Dkt. 41-1 at 8-9.

Patterson asserts that the OCCA's adjudication of this claim resulted in a decision that is contrary to clearly established federal law, involves an unreasonable application of clearly established federal law, and is based on an unreasonable determination of the facts presented in state court. Dkt. 46 at 7. He appears to contend that his "table of exhibits" substantiates that his claim has merit. *Id.* The Court disagrees. To be fair, the OCCA did not cite any clearly established federal law when it evaluated Patterson's claim. But this does not make the OCCA's decision contrary to clearly established federal law or show that the OCCA unreasonably applied that law. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (discussing when a state court decision is contrary to clearly established federal law and explaining that a state court decision need not cite Supreme Court precedent "indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them"). Here, the OCCA applied the controlling legal principles from *Darden* and *DeChristoforo* by examining the entire record to determine whether the challenged remarks "prejudic[ed] [Patterson] to the point he [was] deprived of a fair trial." Dkt. 41-1 at 8-9; *see DeChristoforo*, 416 U.S. at 643. This Court too has reviewed the challenged remarks in the context of the entire proceeding and finds nothing objectively unreasonable about the OCCA's application of these legal principles or about the OCCA's determination of the facts relevant to this claim. Section 2254(d) thus precludes relief,

and the Court denies the petition as to claim eight.

###### E.   Claim eleven:  right of self-representation

Patterson reasserts his claim, raised on direct appeal in his supplemental pro se brief, that the trial court did not permit him to exercise his constitutional right to proceed without counsel. Dkt. 1 at 17; Dkt. 41-3 at 9-10.  He appears to allege that the trial court forced him to accept appointed counsel after Patterson "fir[ed] both of his counsels who was ineffective assistance"; that the trial court "refuse[d] to grant [his] motion request to represent himself"; and that his lack of legal knowledge was not a valid reason to deny his request to proceed without counsel.  *Id.*

"It is . . . well settled . . . that a defendant . . . has the right to 'proceed without counsel when he voluntarily and intelligently elects to do so.'"  *Marshall v. Rodgers*, 569 U.S. 58, 62 (2013) (quoting *Faretta v. California*, 422 U.S. 806, 807 (1975)).  "This right includes the right to control one's own defense, 'to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial.'"  *United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006) (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984)).  The *Faretta* Court recognized "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."  422 U.S. at 835 (internal quotation marks and citation omitted).  But "the right of self-representation is not absolute."  *Indiana v. Edwards*, 554 U.S. 164, 171 (2008).

> To proceed pro se, a defendant must meet four requirements. *First*, the defendant must "clearly and unequivocally" inform the district court of his intention to represent himself.  *Second*, the request must be timely and not for the purpose of delay.  *Third*, the court must conduct a comprehensive formal inquiry to ensure that the defendant's waiver of the right to counsel is "knowingly and intelligently" made.  *Fourth*, the defendant "must be able and willing to abide by rules of

procedure and courtroom protocol."   *United States v. Simpson*, 845 F.3d 1039, 1046 (10th Cir. 2017) (citation and internal quotation marks omitted).

*United States v. Pemberton*, 94 F.4th 1130, 1143 (10th Cir.), *cert. denied*, 145 S. Ct. 604 (2024) (emphases in original).

The OCCA found that the trial court did not violate Patterson's right to represent himself, stating, "[t]he record amply and clearly shows that, while Patterson frequently complained about his attorneys and asked for different attorneys to be appointed, he never asked to represent himself at trial." Dkt. 41-1 at 10.

Patterson asserts that the OCCA's adjudication of this claim resulted in a decision that "is contrary to, and unreasonable to clearly established [Supreme Court] precedent which was based on unreasonable determinations of law and fact." Dkt. 46 at 8. He contends the record supports that he "went through several lawyers" and that he "<u>did</u> request to represent [him]self" but "the trial judge ruled upon against [him] which is in direct violation of . . . *Faretta*. *Id.* Respondent contends, and the record shows, that the OCCA reasonably determined the relevant facts and reasonably applied *Faretta*. As Respondent notes, Patterson filed pro se motions before trial complaining about his counsel and requesting appointment of new counsel. Dkt. 41 at 58; Dkt. 42-8, O.R. vol. 1, at 122-27, 130-34. The trial court held a hearing and denied Patterson's request for a continuance and appointment of new counsel and advised Patterson that he could discuss matters of strategy with his counsel outside the presence of the prosecutors. Dkt. 41 at 58; Dkt. 42-3, Tr. Mot. Hr'g 11/17/14, at 2, 5-7. On the first day of trial, the trial court again heard Patterson's complaints about trial counsel's representation, including Patterson's disagreement with counsel's decision to file certain motions and counsel's strategy for presenting his defense. Dkt. 41, at 58-59; Dkt. 42-4, Tr. Trial vol. 1, at 12-26. During a colloquy with the trial court, Patterson expressed frustration with having to file his own motions, the trial court noted that

24

Patterson was, in fact, represented by counsel who had filed motions on his behalf, and Patterson replied, "But I have to do this with a tenth grade education but I'm willing to do it." Dkt. 42-4 at 23-26. The trial court ultimately advised Patterson that it would not consider his pro se motions because he was represented by counsel. *Id.*

The OCCA's decision that Patterson did not invoke his right to self-representation is based on a reasonable determination of the facts presented in state court. As Respondent contends, the record supports that Patterson filed pro se motions, expressed dissatisfaction with appointed counsel and his belief that counsel was working for the prosecution, requested that counsel be "removed," and asked for additional time to hire his own counsel. Dkt. 42-8 at 122-34; Dkt. 42-3 at 2, 5-7; Dkt 42-4 at 12-26. And Patterson's statement that he was "willing to do it" despite his limited legal education, considered in context, referred to his willingness to file motions on his own behalf; he did not clearly and unequivocally request permission to proceed without counsel. *See Love v. Raemisch*, 620 Fed. Appx. 642, 648 (10th Cir. 2016) (reasoning that an impulsive expression of self-representation that was "borne of frustration" with appointed counsel was not an unequivocal request for self-representation). Thus, the OCCA's denial of this claim because Patterson did not make an unequivocal request to represent himself is objectively reasonable. Patterson's protestations to the contrary do not show that fairminded jurists would disagree with the OCCA's decision. Section 2254(d) thus bars relief and the Court denies the petition as to claim eleven.

### F.    Claim forty-one:  ineffective assistance of appellate counsel

Patterson claims, as he did in his first postconviction appeal, that appellate counsel provided constitutionally deficient representation, in violation of his Sixth and Fourteenth Amendment right to the assistance of counsel. Dkt. 1 at 58-59; Dkt. 41-5 at 39; Dkt. 41-9 at 5-7.

He specifically alleges that appellate counsel: (1) refused to meet with him or consult with him over his direct appeal; (2) refused to raise issues that Patterson identified in his first application for postconviction relief, issues that were apparent from the record, issues Patterson wanted her to raise, and issues that were "beneficial" to Patterson; and (3) failed to investigate his case, including his assertion that another person committed the crimes. *Id.* at 39.

Ineffective assistance of appellate counsel claims based on alleged deficiencies in appellate briefing are subject to review under *Strickland*. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (explaining that the petitioner had to "show that his counsel was objectively unreasonable . . . in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them" and "show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal"). But an "indigent defendant has [no] constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312, 77 L. Ed. 2d 987 (1983); *see also Davila*, 582 U.S. at 533 ("Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed."). Ordinarily, evaluation of whether appellate counsel performed deficiently by omitting issues requires a reviewing court to "look to the merits of the omitted issue." *Id.* (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)).

In his first application for postconviction relief, Patterson alleged the following "facts" to support his claim that appellate counsel provided constitutionally deficient representation:

a. counsel refused to meet with me or consult with me over my appeal

b. refused to raise issue, above stated that is/was beneficial to me

c. failed to raise claims that is plain, objected to and is on the record

26

d. failed to investigate

e. failed to investigate the person who committed the crime. One black male. Demarco Thompson

f. refused to raise the clams that I wanted her to raise

g. ignored and disregarded claims, propositions beneficial to me

Dkt. 41-5 at 39; *see also* Dkt. 2 at 121 (alleging appellate counsel "refused to meet," "refused to raise grounds for relief beneficial to [Patterson]," and "refused to raise or investigate actual innocence with records and exhibits, mental alibi, someone ese committed the crime, filed a defective appeal in part, defective work product in part"). Patterson's reference to issues appellate counsel refused to raise appear to encompass the first twenty-nine claims Patterson raised in his first application for postconviction relief. Dkt. 41-5 at 5-38.

Applying *Strickland* and *Logan v. State*, 2013 OK CR 2, ¶ 5, 293 P.3d at 973, the state district court determined that Patterson's inadequately supported and conclusory allegations of ineffectiveness did not show deficient performance and that Patterson also failed to show prejudice. Dkt. 41-7 at 8-11. The OCCA affirmed the denial of postconviction relief. Dkt. 41-9 at 5-7. The OCCA found "no merit in the claim that [Patterson] was denied effective assistance of trial or appellate counsel as alleged in his post-conviction application," reasoning:

> In his District Court application for postconviction relief [Patterson] alleges in Proposition 30 that he was denied effective assistance of appellate counsel. [He] makes several different claims within the context that his appellate counsel was ineffective. He argues his appellate counsel inadequately argued otherwise winning claims and that his appellate counsel overlooked several meritorious claims. There is nothing in this case that indicates appellate counsel was ineffective in the claims actually raised in his direct appeal or that had appellate counsel argued any of these omitted issues on appeal it would have changed the result of his appeal. [Patterson's] arguments are speculation without evidence and second guessing of his attorney's strategies. A review of the record makes it clear these claims are without merit. [Patterson] does not establish any deficient performance by appellate counsel in these claims. *Strickland*, 466 U.S. at 687-89, 104 S. Ct. at 2064-66. These claims are without merit.

. . .

>After examining [Patterson's] claims of ineffective assistance of counsel, pursuant to the *Logan* and *Strickland* standards stated above, [Patterson] has failed to establish that appellate counsel's performance was deficient or objectively unreasonable and [Patterson] has failed to establish any resulting prejudice. As a result, [his] ineffective assistance of appellate counsel claims are without merit.

*Id.*

Patterson asserts that the OCCA's adjudication of this claim resulted in a decision that is "contrary to and an unreasonable application of [Supreme Court] precedent and an unreasonable determination from the facts." Dkt. 46 at 9. In support of this assertion, Patterson alleges appellate counsel's ineffectiveness "is proven by the record." *Id.* While Patterson appears pro se, the Court agrees with Respondent that his pro se status does not relieve him of the burden of developing facts to support his claims. As Respondent contends, Patterson's conclusory allegations regarding appellate counsel's performance and his apparent request for this Court to review the entire record of state court proceedings to find facts supporting those allegations do not warrant federal habeas relief. Dkt. 41 at 70-76; *see, e.g.*, *Hamilton v. Bird*, 650 F. App'x 585, 593 (10th Cir. 2016) (reasoning that pro se petitioner's conclusory assertions of ineffective assistance of counsel were insufficient to carry petitioner's burden on habeas review to identify "specific facts or evidence" of ineffectiveness); *Allen v. Mullin*, 368 F.3d 1220, 1235 (10th Cir. 2004) ("As to the ineffective assistance of appellate counsel claim, it has been inadequately briefed. We will therefore not consider it."). Even granting Patterson the benefit of liberal construction he is entitled to as a self-represented litigant, the Court finds that he has not met his burden to show that the OCCA's decision rejecting his ineffective assistance of appellate counsel claim involves an unreasonable application of *Strickland* or is based on an unreasonable determination of the facts presented in state court. Section 2254(d) thus precludes relief, and the Court denies the petition as to claim forty-one.

28

### III.    Claims that are procedurally defaulted

Respondent contends the procedural default doctrine bars relief as to claims twelve through thirty-four, thirty-six, thirty-seven, thirty-nine, forty, and forty-three because the state courts denied these claims based on state procedural rules.  Dkt. 41 at 61-65; Dkt. 73 at 63-90.[8] Respondent construes claims thirty-five, thirty-eight, and forty-two as asserting actual innocence to overcome the procedural default of these claims.  *Id.* at 65-67.[9]  Respondent also suggests that some of Patterson's arguments could be construed as relying on the ineffective assistance of appellate counsel claim he asserts in claim forty-one as cause to overcome the procedural default. Dkt. 41 at 61-62, 76.

---

[8] As previously stated, Patterson alleges in claim forty-three that the State of Oklahoma did not have "jurisdiction" to prosecute him because he is Indian and committed his crimes, one of which is a major crime enumerated in the Major Crimes Act, 18 U.S.C. § 1153(a), in Indian country.  Dkt. 1 at 61-67; Dkt. 88.  In addition to his argument that this claim is procedurally barred, Respondent contends that claim forty-three does not state a cognizable federal habeas claim, that § 2254(d) bars relief to the extent it states a cognizable claim, and that the claim would fail on de novo review because it is barred by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).  Dkt. 73 at 2-3.  Under Tenth Circuit precedent, "[a]bsence of jurisdiction in the convicting court is indeed a basis for federal habeas corpus relief cognizable under the due process clause."  *Yellowbear v. Wyo. Att'y Gen.*, 525 F.3d 921, 924 (10th Cir. 2008).  Respondent's disagreement with *Yellowbear* does not persuade this Court that it has authority to overrule binding Tenth Circuit precedent.  Dkt. 73 at 46-63.  Further, because the Court concludes that Patterson has not overcome the procedural default of claim forty-three, the Court declines to address Respondent's alternative arguments.

[9] In claim thirty-five, Patterson asserts that "[s]omeone else, other than [Patterson], committed the crime and was identified by [Patterson] and eyewitnesses." Dkt. 1 at 50.  In claim thirty-eight, he asserts, "Actual and Factual Innocence." *Id.* at 54-55.  In claim forty-two, he asserts "Miscarriage of Justice." *Id.* at 60.  To the extent any of these claims attempt to state a freestanding claim of actual innocence, each claim fails to state a cognizable federal habeas claim.  *See Farrar v. Raemisch*, 924 F.3d 1126, 1131 (10th Cir. 2019) ("The Supreme Court has repeatedly sanctioned gateway actual innocence claims, but the Court has never recognized freestanding actual innocence claims as a basis for federal habeas relief.").  The Court will consider these claims only to the extent they can be construed as asserting gateway actual innocence claims to overcome the procedural default of other claims.  *Id.*; *see Perkins*, 569 U.S. at 392.

### A.    Patterson procedurally defaulted his remaining claims

As previously discussed, when a state court denies a federal claim based on an independent and adequate state procedural rule, the federal claim is technically exhausted but is procedurally defaulted for purposes of federal habeas review. *Davila*, 582 U.S. at 527; *Coleman*, 501 U.S. at 732. A state procedural rule is adequate if the rule is "firmly established and regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (cleaned up). A state procedural rule is independent if the rule relies on state law, rather than federal law. *Simpson v. Carpenter*, 912 F.3d 542, 571 (10th Cir. 2018).

The record supports Respondent's view that Patterson procedurally defaulted claims twelve, thirteen, sixteen through thirty-three, thirty-six, thirty-seven, thirty-nine, and forty-three. Patterson first raised all but one of these claims in his first application for postconviction relief and first raised claim forty-three in his second application for postconviction relief. *See* Dkts. 41-2, 41-3, 41-5, 41-10. The state district court found, and the OCCA agreed, that claims twelve, thirteen, sixteen through thirty-three, thirty-six, thirty-seven, and thirty-nine were barred by the doctrine of waiver because Patterson could have raised these claims on direct appeal. Dkt. 41-7 at 4-6; Dkt. 41-9 at 2-4. The state district court dismissed claim forty-three, as asserted in Patterson's second application for postconviction relief, because the application was not properly verified, as required by Okla. Stat. tit. 22, § 1081, and the OCCA affirmed the denial of postconviction relief for the same reason. Dkts. 41-12, 41-14.

The OCCA's procedural rule barring postconviction review of claims that could have been, but were not, raised on direct appeal is an independent and adequate state procedural rule. *See Fontenot v. Crow*, 4 F.4th 982, 1023 (10th Cir. 2021) ("The OCCA has 'repeatedly stated that Oklahoma's Post-Conviction Procedure Act is not an opportunity to raise new issues, resubmit

claims already adjudicated, or assert claims that could have been raised on direct appeal.'" (quoting *Rojem v. State*, 925 P.2d 70, 72-73 (Okla. Crim. App. 1996))); *Moore v. Hargett*, 1 F. App'x 838, 840 (10th Cir. 2001) ("Under Oklahoma law, the defendant waives all claims that could have been—but were not—raised on direct appeal."). Likewise, the OCCA's procedural rule barring relief when an applicant seeking postconviction relief submits an unverified application is an independent and adequate state procedural rule. *See* Okla. Stat. tit. 22, § 1081 ("A [postconviction] proceeding is commenced by filing a verified "application for post-conviction relief" with the clerk of the court imposing judgment if an appeal is not pending."); *Moore v. Gibson*, 27 P.3d 483, 488 (Okla. Crim. App. 2001) ("The term 'filed' found in Section 1081 of Oklahoma's Uniform Post Conviction Procedure Act means when a properly verified application for post-conviction relief is delivered to the proper district court clerk for the purpose of filing."); *cf. Ferrell v. Allbaugh*, Case No. 17-CV-0038-CVE-JFJ, 2018 WL 358512, at *3 (relying on Oklahoma law to conclude that habeas petitioner's unverified first application for postconviction relief was not "properly filed" for purposes of statutory tolling under 28 U.S.C. § 2244(d)(2)). The Court therefore finds that Patterson procedurally defaulted claims twelve, thirteen, sixteen through thirty-three, thirty-six, thirty-seven, thirty-nine, and forty-three.

The OCCA, however, ultimately denied relief as to claim forty-three for a different reason when Patterson filed a postconviction appeal from the denial of his fifth application for postconviction relief. The OCCA concluded that the rule it announced in *State ex rel. Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim. App. 2021), barred relief on Patterson's Indian country jurisdiction claim. Dkt. 73-10. In *Wallace*, the OCCA "exercise[ed] [its] independent state law authority to interpret the remedial scope of the state post-conviction statutes" and held that the Supreme Court's decision in *McGirt v. Oklahoma*, 591 U.S. 894 (2020), "announced a new rule

of criminal procedure" and does not "apply retroactively in a state post-conviction proceeding to void a final conviction." *Wallace*, 497 P.3d at 688-89, 694. The *Wallace* decision discussed federal law, including *Teague*, in reaching its decision regarding non-retroactive application of *McGirt* in state postconviction proceedings, but clearly expressed that its ultimate decision on that issue rests on independent state law grounds. *Id.* Under Supreme Court precedent, that clear expression is sufficient to establish that the OCCA's *Wallace* decision rests on independent and adequate state procedural rule. *See Michigan v. Long*, 463 U.S. 1032, 1041 (1983) ("If a state court chooses merely to rely on federal precedents as it would on the precedents of all other jurisdictions, then it need only make clear by a plain statement in its judgment or opinion that the federal cases are being used only for the purpose of guidance, and do not themselves compel the result that the court has reached."). Thus, even if the record shows that the OCCA overlooked Patterson's initial procedural default of claim forty-three, the OCCA ultimately found that claim procedurally barred based on the independent and adequate procedural rule it announced in *Wallace*. Thus, claim forty-three is procedurally defaulted for two reasons.

Whether Patterson procedurally defaulted claims fourteen, fifteen, thirty-four, and forty presents a closer question. The state district court found, and the OCCA agreed, that these claims were barred by the doctrine of res judicata because Patterson raised them and the OCCA ruled on them on direct appeal. Dkt. 41-7 at 2-6; Dkt. 41-9 at 2-3. In most cases, a state court's finding that a claim is barred by res judicata would not foreclose habeas review. *See Cone v. Bell*, 556 U.S. 449, 466 (2009) ("When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review."). In this case, however, it is not entirely clear whether Patterson raised claims fourteen, fifteen, thirty-four, and forty on direct appeal. Through these claims, Patterson alleges: his confession was coerced (claim

fourteen); his right to self-incrimination was violated (claim fifteen); he "was denied and deprived of his access to the courts" (claim thirty-four); and he received ineffective assistance of trial counsel (claim forty). To be sure, Patterson presented on direct appeal at least some version of claims fourteen, fifteen, and forty. Patterson's brief in support of his first application for postconviction relief suggests that claims fourteen and fifteen either reassert, or closely relate to, the Fifth Amendment claim he raised on direct appeal and that this Court addressed in this proceeding as claim one. Dkt. 2 at 67-68. Claim forty presents over thirty allegations of ineffective assistance of trial counsel, only some of which appear to overlap (or duplicate) allegations that Patterson presented on direct appeal and that this Court addressed in this proceeding through claims six and seven. *Id.* at 96-98. But claim thirty-four, to the extent the Court understands it, does not appear to reassert any claim that Patterson presented on direct appeal. *Id.* at 88. Under these circumstances, the Court finds that those portions of claims fourteen, fifteen, and forty that were presented on direct appeal are not procedurally defaulted based on res judicata, but that this Court has already considered those portions of claims fourteen, fifteen, and forty that were fairly presented on direct appeal through its analysis of claims one, six, and seven. To the extent portions of claims fourteen, fifteen, and forty rely on new or different allegations that Patterson did not present to the OCCA through his direct appeal, the Court finds those portions of these claims are procedurally defaulted because he raised them for the first time in his application for postconviction relief. *Moore*, 1 F. App'x at 840. The Court further finds that claim thirty-four is procedurally defaulted because Patterson did not raise it on direct appeal. *Id.*

**B. Patterson has not shown that he can overcome the procedural default**

As just discussed, Patterson procedurally defaulted claims twelve, thirteen, sixteen through thirty-three, thirty-six, thirty-seven, thirty-nine, and forty-three and procedurally defaulted

portions of claims fourteen, fifteen, thirty-four, and forty. This Court may not review the procedurally defaulted claims, much less grant habeas relief on them, unless Patterson first shows either cause for the procedural default and resulting prejudice or that the failure to review these claims will result in a fundamental miscarriage of justice. *Davila*, 582 U.S. at 527; *Coleman*, 501 U.S. at 750.

For two reasons, the Court finds that Patterson has not shown either cause and prejudice to excuse the procedural default or that the miscarriage of justice exception permits review. First, to the extent Patterson relies on his allegations that appellate counsel omitted meritorious claims on direct appeal, he fails to establish cause because his ineffective assistance of counsel claim lacks merit. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (acknowledging that "in certain circumstances counsel's ineffectiveness" may establish "cause" to overcome a procedural default, but explaining that "[n]ot just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution"). As previously discussed, the OCCA determined that appellate counsel did not provide constitutionally deficient representation, and the record supports the objective reasonableness of that determination. *See, supra* section II.F. Patterson thus fails to demonstrate cause to excuse the procedural default of claims, or portions of claims, that he did not raise on direct appeal.[10]

Second, the Court agrees with Respondent that Patterson's undeveloped assertions of "actual innocence," in claims thirty-five, thirty-eight, and forty-two, do not support application of

---

[10] Further, the Court notes that the OCCA permitted Patterson to file a pro se supplemental brief to raise issues on direct appeal that his appellate counsel did not raise. Dkt. 41-3. Because "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," Patterson also cannot rely on his own failure to raise the claims he first raised through postconviction proceedings to as "cause" to excuse the procedural default of those claims. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

the miscarriage of justice exception. "When used to overcome procedural issues, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Fontenot*, 4 F.4th at 1029-30 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). But "tenable" gateway actual innocence claims are rare. *Perkins*, 569 U.S. at 386. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). And "[t]he miscarriage of justice exception . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Perkins*, 569 U.S. at 394-95 (second alteration in original) (quoting *Schlup*, 513 U.S. at 329)).

As previously noted, Patterson asserts that "[s]omeone else, other than [Patterson], committed the crime and was identified by [Patterson] and eyewitnesses" (claim thirty-five); asserts his "Actual and Factual Innocence" (claim thirty-eight); and asserts a "Miscarriage of Justice" (claim forty-two). Dkt. 1 at 50, 54-55, 60. As the Court understands the basis for these claims through Patterson's first application for postconviction relief, Patterson appears to contend, in claims thirty-five and thirty-eight, that he is actually innocent because a black male whom he identifies as Demarco Thompson robbed Mr. Zinn, eluded police officers during a car and foot chase, and resisted arrest. Dkt. 41-5 at 29; Dkt. 2 at 82, 89, 94, 121. There is evidence in the record that some witnesses, including Zinn, initially described the robbery suspect as a light-skinned black male. *See*, *e.g.*, Dkt. 3 at 1-5. But this evidence is not new, as trial counsel elicited testimony at trial from Zinn and a second law enforcement officer regarding Zinn's initial

description of the suspect as a light-skinned black male.  Dkt. 42-5 at 79-80, 113-14.  Trial counsel also elicited testimony from Detective Frazier that Zinn could not positively identify Patterson through a pretrial photographic lineup.  *Id.* at 102.  Nonetheless, Zinn positively identified Patterson at trial as the man who assaulted him and stole his car, and the State presented evidence that Patterson threw Zinn's Cadillac keys on the ground while being chased by Officer Helm and that vitamins Zinn purchased just before the robbery were found in the truck that Patterson drove when Officers Helm and Buckner pursued him.  *Id.* at 37, 47-50, 60-61, 76-77, 100.  Patterson's assertions in claims thirty-five and thirty-eight do not support a credible gateway actual innocence claim.

Patterson's conclusory assertions in claim forty-two are even less compelling.  In that claim, Patterson asserts that he has experienced a miscarriage of justice "due to the aforementioned violations" in his first application for postconviction relief (presumably, claims one through forty-one), that he "was denied a fair and impartial trial by jury violating due process and entering into a miscarriage of justice."  Dkt. 41-5 at 40.  Claim forty-two thus does not support a credible gateway actual innocence claim.

For these reasons, Patterson has not overcome the procedural default of claims twelve, thirteen, sixteen through thirty-three, thirty-six, thirty-seven, thirty-nine, and forty-three and portions of claims fourteen, fifteen, thirty-four, and forty.

## CONCLUSION

Based on the foregoing discussion, the Court concludes that Patterson has not shown that federal habeas relief is warranted.  The Court thus denies the petition as to all forty-three claims raised therein.  However, because the Court concludes that reasonable jurists could debate whether claim forty-three states a substantial constitutional claim and could debate the Court's

determination that relief on that claim is barred by an adequate and independent state procedural rule, the Court grants a certificate of appealability on the issue of whether the rule announced by the Oklahoma Court of Criminal Appeals in *State ex rel. Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim. App. 2021), is an independent and adequate state procedural rule that bars relief as to Patterson's claim that he was denied due process when the State of Oklahoma exercised criminal jurisdiction to prosecute him for crimes he committed in Indian country. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS THEREFORE ORDERED** that:

1. the Clerk of Court shall note on the record the substitution of Steven Harpe, Director, in place of Carrie Bridges, Warden, as party respondent;

2. the petition for writ of habeas corpus (Dkt. 1) is **denied**;

3. a certificate of appealability is **granted** on the following issue: whether the rule announced by the Oklahoma Court of Criminal Appeals in *State ex rel. Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim. App. 2021), is an independent and adequate state procedural rule that bars relief as to Patterson's claim that he was denied due process when the State of Oklahoma exercised criminal jurisdiction to prosecute him for crimes he committed in Indian country; and

4. a separate judgment shall be entered herewith.

**DATED** this 10th day of July, 2025.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE